09-1994-cv
Carco Group, Inc. v. Maconachy

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 2ⁿᵈ day of July, two thousand ten.

PRESENT:     ROSEMARY S. POOLER,
                      REENA RAGGI,
                      DEBRA ANN LIVINGSTON,
                              Circuit Judges.

_____

CARCO GROUP, INC.,

                              Plaintiff-Counter-Defendant-Counter-Claimant-Appellee,

PONJEB V, L.L.C.,

                              Plaintiff-Counter-Defendant-Appellee,

          v.                                                          09-1994-cv

DREW MACONACHY,

                              Defendant-Counter-Claimant-Appellant.

_____

1

**For Appellant:**       Gary A. Ahrens, James R. Troupis, Miriam S. Fleming, Michael Best & Friedrich, LLP, Milwaukee, WI

              Cheryl F. Korman, Merril S. Biscone, Rivkin Radler LLP, Uniondale, NY

**For Appellees:**       James M. Wicks, Franklin C. McRoberts, Farrell Fritz, P.C., Uniondale, NY

              Edward F. Cunningham, Garden City, NY

Appeal from a judgment of the United States District Court for the Eastern District of New York (Lindsay, M.J.).

UPON DUE CONSIDERATION IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be AFFIRMED in part, VACATED in part, and REMANDED for further proceedings.

Carco Group, Inc. and its affiliate Ponjeb V, L.L.C. (together, "Carco") filed suit against their former employee Drew Maconachy alleging breach of contract and faithless servant. After a four week bench trial, Magistrate Judge Arlene Lindsay of the Eastern District of New York found in favor of Carco and entered judgment against Maconachy. Maconachy now appeals. We assume the parties' familiarity with the procedural history, facts, and issues on appeal.

Following a bench trial, we review the district court's findings of fact for clear error, and its conclusions of law de novo. We review mixed questions of law and fact de novo. Roberts v. Royal Atl. Corp., 542 F.3d 363, 367 (2d Cir. 2008).

I. Breach of Contract

To establish a prima facie case for breach of contract, Carco must prove: 1. The existence of a contract; 2. A breach of the contract; and 3. Damages resulting from the breach. Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 525 (2d Cir. 2004).

The district court found two separate breaches of contract. First, Maconachy "failed to comply with the reasonable duties and directions given to him by his superiors." Specifically, Maconachy did not take MMI's financial losses seriously, and refused to follow direction from his superior, Peter O'Neill, to remedy them. The court found that this first breach began on November 17, 2000 when Maconachy walked out early from a planning meeting. Second, the court found a separate breach of contract from Maconachy's involvement in the alteration of employment documents. We affirm the district court on both findings, and its related conclusion that Maconachy breached both his employment agreement and the asset purchase agreement.

The district court, however, erred (1) in concluding that all net operating losses constituted general, as opposed to consequential, damages, and (2) in failing to articulate the causal link between Maconachy's breaches and the damages awarded.

General damages seek to compensate the plaintiff for "the value of the very performance promised," often determined by the market value of the good or service to be provided. Schonfeld v. Hilliard, 218 F.3d 164, 175-76 (2d Cir. 2000). Consequential damages, by contrast, are those that result when the non-breaching party's ability to profit from related transactions is hindered by the breach. "In the typical case, the ability of the non-breaching party to operate his business, and thereby generate profits on collateral transactions, is contingent on the performance of the primary contract. When the breaching party does not perform, the non-breaching party's business is in some way hindered, and the profits from potential collateral exchanges are lost." Tracetebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 109 (2d Cir. 2007) (internal quotation marks omitted). Thus, any damages resulting from Carco's inability to secure new business were consequential. The distinction is important because, unlike general damages, consequential damages may be recovered only where the amount of loss is "capable of proof with reasonable certainty." Id.

Causation is an essential element of a claim for damages resulting from breach of contract regardless of whether the plaintiff claims general or consequential damages. Damages for breach of contract must be "directly and proximately caused" by the breach. Nat'l Mkt. Share, Inc., 392 F.3d at 525 (citing Wakeman v. Wheeler & Wilson Mfg. Co., 4 N.E. 264, 266 (N.Y. 1886) (emphasis omitted)). They must not "be so remote as not to be directly traceable to the breach, or . . . the result of *other intervening causes*." Id. at 526 (citation omitted). Further, the fact of damages caused by the breach must be "reasonably certain." Tractebel, 487 F.3d at 110 (citation and emphasis omitted). Here, the district court failed to articulate any causal link between the breaches found and the damages awarded, stating only that MMI's lack of profitability was "due almost exclusively to Maconachy's breach of the Performance Clause" because his "performance and obedience was central to Carco's expectation of receiving a profitable business." That Maconachy breached his employment contract does not necessarily mean the breach caused the company to be unprofitable. The district court should have first engaged in a proximate cause analysis to show that the breaches caused <u>some</u> loss. It should have then discussed potential intervening causes that might have broken the link between Maconachy's breach and any damages suffered.

Testimony suggested various intervening causes for MMI's unprofitability that the district court should have addressed. For example, MMI was already losing money when it was bought by Carco, and MMI was in fact making money by the time Maconachy was fired, despite Maconachy's continued breach of contract. Further, a Carco executive testified that the losses were due to "[a] variety of business reasons....They [MMI] were primarily involved in environmental investigations. That marketplace had changed." The 2001 business plan stated: "the four-year trend in declining revenues from an ever-shrinking environmental support services market resulted in a loss of approximately $1.8 million in the MMI operation." The 2002 business plan also discussed the "highly competitive" market in which MMI operated.

3

The district court failed to discuss any of this evidence or explain why factors other than Maconachy's disobedience may have caused the net losses. Nonetheless, the court awarded $901,645 in damages for breach of contract. The number reflected the actual economic losses Carco suffered from Nov. 17, 2000 through Dec. 2002, which included Maconachy's compensation as well as acquisition costs.

The court did not find any damages resulting from Maconachy's breach from his involvement in altering documents.

The district court did not provide any evidence that Maconachy's disobedience caused any losses. On remand, the district court must determine what damages, if any, were directly and proximately caused by Maconachy's breach. These might include loss of salary paid to a disobedient employee, the value of lost opportunities, or any other damages the court concludes flowed from Maconachy's breaches. The court must then determine which damages were general and which consequential. It may only award consequential damages where the amount of loss can be ascertained with reasonable certainty. To award general damages, the court need only be certain that some damage resulted from the breach; certainly as to the exact dollar amount is not required. Wakeman, 101 N.Y. at 209; Tractebel, 487 F.3d at 110.

We therefore VACATE the breach of contract damages award, and REMAND to the district court to recalculate damages, if any, in a manner consistent with this summary order.

II. Faithless Servant

"New York law with respect to disloyal or faithless performance of employment duties is grounded in the law of agency, and has developed for well over a century." Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003) (citing Murray v. Beard, 7 N.E. 553 (N.Y. 1886)). "[A]n agent is obligated 'to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'" Id. (quoting W. Elec. Co. v. Brenner, 360 N.E. 2d 1091, 1094 (N.Y. 1977)). A person who is found to be faithless in his performance of services is generally liable for all compensation from the date of the breach, and the faithlessness need not have caused damages. Id.

As this Court has previously observed, New York courts continue to apply two alternative standards for determining whether an employee's conduct warrants forfeiture under the faithless servant doctrine. Id. at 201-02. The first standard requires that "misconduct and unfaithfulness . . . substantially violate[] the contract of service," Turner v. Konwenhoven, 2 N.E. 637, 639 (N.Y. 1885). The second standard requires only that an agent "act[] adversely to his employer in any part of [a] transaction, or omit[] to disclose any interest which would naturally influence his conduct in dealing with the subject of [his] employment." Murray, 7 N.E. at 554. Here, the district court found that under either standard, Maconachy was a faithless servant because of his self-dealing and deception in removing the name of a family member from employee records transmitted on a weekly basis to O'Neill.

4

We see no error in this determination. The deception in this case is plain, and an employee who puts or keeps a family member on the payroll against his superior's direct orders benefits his own interests at the expense of his employer, conduct squarely within the definition of self-dealing. See Black's Law Dictionary 1390 (8th ed. 2004) (defining self-dealing as "[p]articipation in a transaction that benefits oneself instead of another who is owed a fiduciary duty"). Courts applying even the first of the two legal standards described above "have found disloyalty not to be 'substantial' only where the disloyalty consisted of a single act, or where the employer knew of and tolerated the behavior." Phansalkar, 344 F.3d at 201-02. Here, the name of Maconachy's brother-in-law was ultimately redacted from over one hundred weekly reports, during which time he received substantial compensation from MMI, contrary to O'Neill's instruction that this relationship be terminated.

Therefore, we AFFIRM the district court's judgment as to the faithless servant claim.

We have examined the remainder of plaintiffs' arguments and find them to be without merit. Accordingly, the judgment of the district court is AFFIRMED in part, VACATED in part, and REMANDED for further proceedings.[1]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[1] Because we vacate and remand as to the district court's damages award, we need not address whether, as both parties agree, the court made a mathematical error in its calculation of prejudgment interest.

5