11-4445-cv (L)
*CARCO GROUP, Inc., et al. v. Maconachy*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————

August Term, 2012

(Argued: November 14, 2012                    Decided: May 21, 2013)

Docket No. 11-4445-cv(L), 11-5174-cv(CON), 12-792(XAP)

———————————

CARCO GROUP, INC. AND PONJEB V, L.L.C.,

*Plaintiffs-Counter-Defendants-Appellees-Cross-Appellants*,

– v. –

DREW MACONACHY,

*Defendant-Counter-Claimant-Appellant-Cross-Appellee*.

———————————

Before:  KEARSE, STRAUB, and POOLER, *Circuit Judges*.

———————————

Cross-appeals from a post-remand judgment in favor of, and award of attorneys' fees, costs, and interest to, Plaintiffs-Counter-Defendants-Appellees-Cross-Appellants.

We **VACATE** the District Court's judgment and awards with respect to Plaintiffs' breach of contract claim and **REMAND** for further findings as to proximate causation. We **VACATE** the award of attorneys' fees and **REMAND** for recalculation of those fees following the District Court's determination as to whether Plaintiffs proved proximately-caused damages on the contract claim. We **REVERSE** the District Court's decision that attorneys' fees should be reduced by twenty percent across-the-board, and the denial of interest on the attorneys' fees awards. In all other respects, we **AFFIRM**.

———————————

JAMES M. WICKS, (Franklin C. McRoberts, *on the brief*) Farrell Fritz, P.C., Uniondale, NY, Edward F. Cunningham, Garden City, NY, *for Plaintiffs-Counter-Defendants-Appellees-Cross-Appellants*.

GARY A. AHRENS, (Miriam S. Fleming, *on the brief*) Michael Best & Friedrich LLP, Milwaukee, WI, *for Defendant-Counter-Claimant-Appellant-Cross-Appellee*.

_____

PER CURIAM:

This suit involving breach of contract and related claims and counterclaims returns to us on cross-appeals. Following remand from the prior appeal, the District Court (Arlene R. Lindsay, *Magistrate Judge*) determined that Defendant-Counter-Claimant-Appellant-Cross-Appellee Drew Maconachy's ("Maconachy") breaches of two contracts proximately caused injury to Plaintiffs-Counter-Defendants-Appellees-Cross-Appellants CARCO GROUP, Inc. and PONJEB V, L.L.C. (collectively, "Carco"), and entered judgment accordingly, awarding damages, attorneys' fees, costs, and interest. The parties now cross-appeal.

Maconachy argues principally that the District Court's findings below were erroneous because proximate causation did not exist, and that various determinations as to damages, fees, costs, and interest were derivatively, as well as independently, in error. Carco challenges certain aspects of the District Court's calculation of the attorneys' fees awarded to Carco and the denial of prejudgment interest on that award. For the reasons that follow, we **VACATE** the breach of contract judgment, including any resulting damages, attorneys' fees, costs, and interest awards, and **REMAND** for further proceedings consistent with this opinion. To the extent any costs and interest awards were based on the faithless servant cause of action, we **AFFIRM**. We **REVERSE** the District Court's twenty-percent attorneys' fees reduction and its denial of prejudgment interest on attorneys' fees. We **REMAND** for recalculation of the award of attorneys' fees in light of our reversal of the twenty-percent reduction and in light of findings to be made by the District Court with respect to proximate cause on the contract claim.

**BACKGROUND**

This is the second appeal in what is essentially a contractual dispute. Some of the background of this litigation is set forth in our prior ruling in *Carco Group, Inc. v. Maconachy*, 383 F. App'x 73 (2d Cir. 2010) ("*Carco I*"). In 2008, Magistrate Judge Lindsay, by mutual consent of the parties, pursuant to 28 U.S.C. § 636(c), presided over a bench trial on Carco's breach of contract, warranty, and faithless servant claims, as well as on Maconachy's breach of contract counterclaims. In *Carco I*, we affirmed in part the District Court's judgment in favor of Carco and against Maconachy, vacated the judgment in part, and remanded the case for further proceedings.

Specifically, we affirmed entirely the District Court's judgment as to the faithless servant cause of action. We also affirmed the District Court's findings that Maconachy breached both the Employment Agreement ("EA"), which governed his employment by Carco, and the Asset Purchase Agreement ("APA"), which governed Carco's acquisition of the private investigation business, Murphy & Maconachy, Inc. ("MMI"). We found error, however, in the District Court's conclusions that all of MMI's net operating losses constituted general (as opposed to consequential) damages, and in its failure to articulate the causal link between Maconachy's breaches of the contracts and the damages awarded therefor.

Thus, the case was remanded so that the District Court could "determine what damages, if any, were directly and proximately caused by Maconachy's breach[es]." *Carco I*, 383 F. App'x at 76. Although the District Court had stated that MMI's lack of profitability was "due almost exclusively to Maconachy's breach[es]" of the relevant agreements, we indicated that the District Court should have "engaged in a proximate cause analysis to show that the breaches caused *some* loss," and "then discussed potential intervening causes that might have broken the

link between Maconachy's breach[es] and any damages suffered." *Id.* at 77 (internal quotation marks omitted). We further instructed that the District Court must "determine which damages were general and which consequential. It may award consequential damages only where the amount of loss can be ascertained with reasonable certainty. To award general damages, the court need only be certain that *some* damage resulted from the breach; certainty as to the exact dollar amount is not required." *Id.* at 76.

In its post-remand filings in the District Court, Carco advanced three alternative measures of its damages resulting from Maconachy's breaches: "(1) damages for its total lost capital investment in MMI West (or in the alternative damages for the loss of salary paid to a disobedient employee); (2) damages for the total loss of the value of the goodwill attributed to MMI West; and (3) damages for the loss of MMI West's business opportunities from 2000 through 2005."[1] SPA-98.

In considering the parties' post-remand submissions on the issue of damages, the District Court stated that it had undertaken a proximate cause analysis, considered potential intervening causes that might have broken the causal link between Maconachy's breaches and the damages Carco suffered, and determined which damages were general and which were consequential.

With respect to proximate causation, the District Court stated that the trial record supported the finding (affirmed in *Carco I*) that Maconachy breached the EA and APA, and that Maconachy's refusal to comply with Carco's directives to, *inter alia*, implement sales programs—a key aspect of the valuation report Carco relied upon in its decision to acquire MMI—led directly to MMI West incurring losses.

---

[1] MMI West refers to MMI's California office, of which Maconachy was President.

Next, the District Court examined potential intervening factors that may have broken the causal connection between Maconachy's breaches and Carco's losses, as identified by Maconachy. The District Court rejected the notion that Carco's failure to provide introductions to new business prospects was an intervening cause, because such a conclusion lacked foundation in, and indeed was inconsistent with, evidence adduced at trial. Certain of Carco's accounting decisions regarding MMI were also deemed not to be an intervening cause because the damages sought had already been reduced to exclude the acquisition costs of MMI. With respect to external market factors, the District Court (1) rejected them as an intervening cause between Maconachy's breaches and Carco's lost capital investment damages because the declining market had been explicitly factored into Carco's acquisition costs and expectations, but (2) accepted them as an intervening cause that broke the causal chain between Maconachy's breaches and lost business opportunities and future profit damages, and (3) accepted them as an intervening cause between Maconachy's breaches and loss of goodwill and return on Carco's capital investment damages.[2]

Having determined that external market factors intervened so as to preclude the use of two of Carco's measures of damages, the District Court "stated that it 'w[ould] not consider . . . Carco's capital investment in MMI West [] *except* to the extent that it included salary paid to a disobedient employee[].'" SPA-106 (emphasis added). The District Court concluded, following our instruction that "[g]eneral damages seek to compensate the plaintiff for the value of the very performance promised, often determined by the market value of the good or service to be provided," *Carco I*, 383 F. App'x at 75 (internal quotation marks omitted), that "[b]ecause

---

[2] The District Court went on to reject three additional intervening causes—the loss of Carco's president, Carco's alleged lack of experience, and Carco's allegedly inadequate due diligence—which had been offered by Maconachy in the first appeal, but abandoned on remand. Accordingly, we do not consider these potential intervening causes on this appeal.

5

awarding Carco the lost salary it paid Maconachy would compensate Carco for the value of the very performance promised by Maconachy but which Maconachy failed to deliver, such an award would constitute general damages." SPA-109.

The District Court found that Maconachy was in breach of the relevant agreements from November 17, 2000 until his termination on December 28, 2005. However, the District Court noted that "as a form of disgorgement under its faithless servant claim, Carco already recovered Maconachy's salary from September 26, 2003 to December 28, 2005." *Id.* Thus, in order to avoid double recovery, the District Court determined that, on its breach of contract claim, Carco was "entitled to an award of the salary it paid to Maconachy and which Carco lost due to Maconachy's breach from November 17, 2000 to September 25, 2003." *Id.* Prorating Maconachy's $200,000 annual salary for this period yielded an award of $571,506.85, plus mandatory statutory nine percent per annum prejudgment interest pursuant to CPLR §§ 5001, 5004.[3]

The District Court directed the parties to make further submissions regarding Carco's recovery of attorneys' fees that earlier findings of fact and conclusions of law had deemed mandatory under the EA and APA. Carco incorporated by reference its 2009 submission on attorneys' fees and costs, and submitted new documentation regarding the appeal in *Carco I* and briefing on remand. In total, Carco requested over $4 million in legal fees, costs, and disbursement, as well as prejudgment interest thereon, bringing the total to $5,198,890.07. Following the submission of opposition papers, the District Court conducted a thorough review

---

[3] On October 14, 2011, the District Court issued an order amending the damages judgment to reflect parties' prior deposits into escrow and access to funds so that prejudgment interest was calculated from April 22, 2002 through September 16, 2009. This third amended damages judgment, including the revised prejudgment interest figure, was in the amount of $952,553.17.

6

of the documentation supporting Carco's request, and awarded attorneys' fees in the amount of $1,499,613.41 and costs in the amount of $327,044.76, for a total award of $1,826,658.17.

In arriving at this figure, the District Court modified the components of the fees sought by Carco in numerous ways. For example, the District Court found certain fee requests vague, insufficiently connected to the instant action, or too remote in time to meet Carco's burden, as the moving party, of showing the reasonableness of the requested fees. Other requests were reduced so as to bring the hourly fees sought in line with prevailing rates in the district for substantively similar cases. Still other requests were modified or denied because the background and experience of attorneys, support staff, and consultants were inadequately documented, or the rates sought for these individuals were insufficiently justified. While the District Court found the fees request's overall level of detail, including contemporaneous time records, to be sufficient, it also found that the number of hours spent by Carco's counsel and its support staff to be "excessive and in certain instances duplicative," and therefore reduced the number of overall hours by twenty-five percent. SPA-168–69. The District Court declined also to award costs for pre-trial expenses of Carco's consultants.

Finally, because it found that "the benefit of th[e] litigation d[id] not reach far beyond the immediate action" and there were no "transcending principles involved," the District Court further reduced the total fees and costs award by twenty percent to "bring the fee award within the contours of the [] amount of damages awarded in this action." SPA-172–73.

The District Court declined to award prejudgment interest on fees and costs, interpreting the language of the relevant APA provision to provide for interest on damages alone.

Maconachy appealed the District Court's damages determination on October 19, 2011. Maconachy appealed the District Court's judgment as to attorneys' fees and costs on December

7

14, 2011. After the relevant bankruptcy stay was lifted, Carco cross-appealed the attorneys' fees and costs judgment on February 24, 2012.

On appeal, Maconachy argues that Carco failed to show that his breaches proximately caused any damage; that the District Court's damages award on remand did not properly take into account the value of the work he performed for Carco; that the District Court failed to consider the monies Carco would have had to pay him under the APA were it not for his breaches; and that even if Carco had proven damages, their disproportion to the fees and costs awarded made the latter improper.

Generally, Carco argues that the judgment below should be affirmed because: the myriad breaches identified by the District Court support its finding that Maconachy proximately caused Carco damages as measured by the salary paid him during the period of his breaches; Maconachy's material breaches entitled Carco to suspend its performance under the EA and APA and therefore the monies Carco would have paid Maconachy if he had not breached should not be offset from the damages award;[4] and no rule prohibits the disproportionality that exists between the fees it was awarded and the damages it recovered. Carco also argues for a limited reversal, and contends that the District Court erred in three ways: by denying Carco interest on its attorneys' fees award; by reducing Carco's attorneys' fees by twenty percent to somewhat align the award with the amount of damages recovered; and by failing to consider Carco's prompt payment of its legal fees as presumptive evidence of their reasonableness.

---

[4] Carco argues that Maconachy's offset claim is foreclosed because it was raised in the prior appeal, the Summary Order in which stated: "[w]e have examined the remainder of plaintiffs' arguments and find them to be without merit." *Carco I*, 383 F. App'x at 77. Since only Maconachy, the Defendant, had appealed, Carco argues that "plaintiffs" should have read "Defendant," *i.e.*, Maconachy. As discussed below, Maconachy's offset argument is properly part of this appeal.

8

**DISCUSSION**

**I.     Legal Standards**

Following a bench trial, we review a district court's findings of fact for clear error, and its conclusions of law *de novo*. The District Court's finding of proximate causation in this case is a finding of fact that is subject to the clear error standard of review. *See Cont'l Ins. Co. v. Lone Eagle Shipping Ltd. (Liberia)*, 134 F.3d 103, 104 (2d Cir. 1998) (per curiam).

We review a district court's award of attorneys' fees for abuse of discretion. *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 416 (2d Cir. 2010). An abuse of discretion occurs "when (1) the court's decision rests on an error of law (such as application of the wrong legal principle) or clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Id.* (alterations and internal quotation marks omitted). The deference exercised in an abuse of discretion review "takes on special significance when reviewing fee decisions because the district court, which is intimately familiar with the nuances of the case, is in a far better position to make such decisions than is an appellate court, which must work from a cold record." *Id.* (internal quotation marks and alterations omitted).

Where a fee award turns on the interpretation of a contract, the District Court's determination, as with all contract interpretation, is subject to *de novo* review. *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 198 (2d Cir. 2003). Thus, where an appellant's challenge regarding an award of attorneys' fees is that the District Court made an error of law in granting or denying such an award, the District Court's ruling is reviewed *de novo*. *Baker v. Health Mgmt. Sys., Inc.*, 264 F.3d 144, 149 (2d Cir. 2001).

*II.     Proximate Causation*

Maconachy argues that the District Court erred in finding that his breaches proximately caused Carco any damages. Specifically, Maconachy argues that the District Court "failed to follow" our direction in *Carco I* to "'articulate the causal link between Maconachy's breaches and the damages awarded' and to 'provide . . . evidence that Maconachy's disobedience caused any losses.'" Appellant's Br. at 30.

We agree, to an extent. The District Court's findings with respect to proximate causation are insufficiently grounded in trial or post-trial evidence to support its judgment and damages award. Although we review the District Court's causation determination only for clear error, we are unable to locate the particular bases in the trial record that would support the Court's conclusion that Maconachy's material breaches of the EA proximately caused Carco to suffer damages. The District Court's findings that "Maconachy's refusal to comply with Carco's directives to implement his sales programs proximately caused MMI West to incur losses," SPA-98, and that "at the time Maconachy was terminated in December 2005, MMI West was a failed venture and a total loss to Carco," SPA 100–01, are inadequately linked to the evidentiary record, and in one respect are clearly erroneous in light of a conflicting factual finding by the Court that is amply supported by the evidence. Indeed, the District Court's finding that "MMI West was . . . a total loss to Carco," SPA-100–01, is contradicted by the Court's own factual finding that "MMI West had a total cumulative net profit for the six years of Maconachy's employment of $288,513," SPA-94. This finding of MMI West's net profit is supported by Carco's own exhibit for that six-year period, which was cited by the Court, *see id*. (citing Plaintiffs' Trial Exhibit 441; *see also* E-1599–1602, 1763, 1765, 1628, 1630, 1655, 1657, 1684). Given that MMI West, during Maconachy's tenure after the company was purchased by Carco,

10

made a cumulative net profit, the Court's finding that MMI West was a "total" loss to Carco is clearly erroneous.

There may, however, be some evidence in this lengthy and complex record that could support a finding that Carco suffered some loss, even if not a total loss, as a result of Maconachy's nonperformance of tasks assigned to him, *see, e.g.*, Trial Tr. at 1477 (testimony supporting Maconachy's *partial* responsibility for Carco's financial loss). The Order before us made no attempt to quantify that loss—other than to state erroneously that the loss was "total." Given the potential for a properly supported finding that Maconachy's performance caused Carco some loss, we vacate and remand the judgment on Carco's contract claim to permit the District Court to provide findings as to proximate cause and analysis as to a permissible quantification of Carco's loss, together with citations to the evidentiary record in order to facilitate appropriate appellate review.

Because one or both of the parties dispute numerous of the District Court's further determinations as to the measure and calculation of damages, attorneys' fees, costs, and interest, we reach these issues so as to provide guidance regarding the appropriateness of reinstating these determinations other than that with regard to attorneys' fees if the logically prior proximate causation and damages findings are confirmed on remand. To the extent any of these determinations are based on the faithless servant claim, our vacatur does not disturb them.

### III. *Damages*

The District Court held that one alleged intervening cause—the declining market for the services MMI provided—broke the causal link between Maconachy's breaches and Carco's injury, as measured by lost business opportunities and future profits or loss of goodwill and return on capital. However, the District Court found that one component of Carco's lost capital

11

investment—the salary it paid Maconachy during the period of his breach of the relevant agreements—was unaffected by any intervening market forces. These determinations are reviewed for clear error.

***Salary as Measure of General Damages***

The District Court accurately noted our observation that "[g]eneral damages seek to compensate the plaintiff for the value of the very performance promised, often determined by the market value of the good or service to be provided," *Carco I*, 383 F. App'x at 75 (internal quotation marks omitted), when it held that the salary Carco paid Maconachy constituted general, out-of-pocket loss.

Maconachy now contends that the District Court "failed to take into account or even address the various other tasks, duties and work CARCO assigned Maconachy that he completed, [or] the benefit and profits CARCO sustained as a result." Appellant's Br. at 31. The District Court found that "Maconachy's promised performance [was] *worthless* to Carco and the compensation Carco paid to Maconachy was a *total* loss," SPA-109 (emphases added), and it found that Carco's profitability was not due to "*any actions attributable to Maconachy*," SPA-106 (emphasis added). These broad-brush conclusory findings were not accompanied by citations to the record and other, more detailed, factual findings by the Court leave us with the definite and firm conviction that a mistake has been committed.

Although Carco's main grievance against Maconachy was that he did not develop business for MMI West from new clients, and the record supports the District Court's finding that he resisted Carco's instructions to solicit such business, the Court did not find that Maconachy in fact performed no work on behalf of MMI West. To the contrary, while faulting Maconachy for not following Carco's instructions to develop new clients and to travel alone, the

12

District Court found that in the five-plus years during which he failed to follow those instructions Maconachy continued to have sales meetings with former and existing clients, *see* SPA-9, took at least 38 business trips on behalf of MMI West, *see* SPA-14, and visited 33 prospects identified in Carco's sales plans, *see id.* Moreover, evidence as to Maconachy's weekly travel schedules indicated that he traveled several times every month for activities including field investigations, *see, e.g.*, E-996, 1010, meetings, and other assignments. *See, e.g.*, E-995–1225. Carco officials also testified that, in addition to making sales calls—the responsibility he was found to have failed to perform—Maconachy had various other administrative responsibilities with MMI West, Trial Tr. at 1369–70, his performance of which (except for the unpermitted hiring of his relatives) was largely unchallenged.

The District Court did not make any findings quantifying the business that MMI West obtained during the relevant period from new clients rather than from former or existing clients. And the Court did not make any findings as to who, other than Maconachy, should be credited with the business that MMI West was getting from former or existing clients. Given (a) the fact that MMI West during Maconachy's tenure made a profit, (b) the absence of any finding that any of MMI West's income came from new clients, (c) the Court's findings as to Maconachy's scores of business solicitations from former or existing MMI West clients, and (d) the absence of any finding that business from MMI West's former or existing clients should be credited to anyone other than Maconachy, we are left with the firm and definite impression that the Court's finding that Maconachy's performance was worthless was a mistake.

The finding that Carco did not enjoy as great a profit as it had hoped is, of course, not clearly erroneous. But lost profits are consequential damages that must be proven with reasonable certainty, *see, e.g.*, *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*,

13

487 F.3d 89, 111 (2d Cir. 2007) ("[A] party claiming consequential damages must . . . prove the *amount* of damage with 'reasonable certainty.'" (quoting *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261 (1986) (emphasis in original))), and a court must make appropriate findings as to proximate cause. Carco was not entitled to a substitute measure of damages—Maconachy's entire salary—on the basis, unsustainable in the evidence, that his performance was entirely worthless.

On remand, the District Court must account for the value of the services provided by Maconachy to Carco in determining what amount of damages, if any, should be awarded (although the exact value of those damages, being general damages, need not be "reasonably certain," *see Tractebel Energy Marketing, Inc.*, 487 F.3d at 111). Although on a faithless servant claim such as we upheld in *Carco I*, an "employer is entitled to the return of compensation paid [to an] employee during [a] period of disloyalty," regardless of whether his "services were beneficial to the principal," *Phansalkar v. Andersen Weinroth & Co.*, 344 F.3d 184, 200 (2d Cir. 2003) (internal quotation marks omitted), a total forfeiture of compensation is not the remedy for a normal breach of contract. Rather, the benefit enjoyed by Carco must be deducted from its losses in order to put Carco "in the same economic position [it] would have been in had [Maconachy] fulfilled his contract," *Adams v. Lindblad Travel, Inc.*, 730 F.2d 89, 92 (2d Cir. 1984). Because the District Court failed to conduct this analysis, and instead awarded Carco the entirety of Maconachy's salary despite substantial evidence that he provided some amount of value to Carco, the District Court's calculation of damages was clearly erroneous.

*A.* *Applicability of an Offset*

Even if the damage measure employed by the District Court was proper, Maconachy argues that the failure to reduce these damages by the payments his breaches relieved Carco from

14

making under the APA, *see Carco Group, Inc. v. Maconachy*, 644 F. Supp. 2d 218, 247 (E.D.N.Y. 2009); SPA-31–32, was error. "A party who is privileged to suspend performance because of a material breach can recover damages, but those damages," according to Maconachy, must be "reduced by the value of any performance that the non-breaching party has not performed." Appellant's Br. at 50. Thus, to award Carco damages in the full amount of his salary without first subtracting the money Carco has saved in not paying its obligations under the APA would, it is argued, be an impermissible windfall.

Carco responds that, as an initial matter, the prior appeal forecloses Maconachy's offset contention, since it was raised on his first appeal and *Carco I* indicated that we had considered and rejected all other arguments. The contention that we decided the offset issue by stating that we had "examined the remainder of" a party's "arguments and f[ou]nd them to be without merit" but that we inadvertently stated that we rejected as meritless the arguments of "plaintiffs[]," rather than of defendant Maconachy, is no impediment to further consideration of Maconachy's offset contention. Even if we intended to indicate that we had considered and rejected the remainder of *Defendant*-Appellant Maconachy's arguments, *Carco I* also vacated and remanded as to *all* contract damages determinations ("We therefore VACATE the breach of contract damages award, and REMAND to the district court to recalculate damages, if any, in a manner consistent with this summary order." *Id.* at 76.). Therefore, even assuming *arguendo* that *Carco I*'s concluding sentence is best understood as having reached the offset issue, that issue is not foreclosed by the prior appeal because our vacatur language provides a carve-out preventing any such preclusive effect of the disputed catch-all sentence.

With respect to the merits of Maconachy's offset argument, Carco argues that the District Court faithfully applied a damages measure we endorsed in the prior appeal, and that, contrary to

Maconachy's claims, Carco received no windfall from the damages awarded. Carco contends that Maconachy's breach excused it from performance, and that the authority cited by Maconachy pertains only to lost profits in the context of the traditional contract measure of damages (meaning expectation damages).

Indeed, the measure employed by the District Court to assess general damages—benefit of the bargain—is not inconsistent with the authority Maconachy cites. *See, e.g.*, Reply Br. at 47 (citing Dan B. Dobbs, *Law of Remedies* § 12.2(1) (2d ed. 1993) (noting that the goal of contract damages is "to put plaintiff as nonbreaching party in as good a position as he would have been in had the contract been performed, and no better")). Had Maconachy performed under the EA, Carco would have gotten what it bargained for. But, because of what the District Court characterized as Maconachy's thoroughgoing breaches, the damages measure applied by the District Court awarded to Carco the market value of the services for which it contracted, but did not receive.

Although Carco itself has argued that the EA and APA were "mutually dependent" such that Maconachy's breaches excused Carco's payment obligations under the APA (and, the District Court found that to hold otherwise "would essentially reward Maconachy for his subterfuge and false promises," *see* SPA-32), it remains the case that there were two distinct contracts, breaches of each, and the terms of each applied to discrete pools of money. None of the authority Maconachy cites stands for the proposition that merely because the same conduct breached two contracts, the financial value of being excused from performing one contract must necessarily be offset against damages sustained (and recovered) under the other. *See* Appellant's Br. at 50–53 (citing, *inter alia*, *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995) (noting only that if a "benefit appears to have accrued to the plaintiff because of the

16

breach" of a *single* contract, "the defendant is only chargeable with net loss."  (internal quotation marks omitted)).

We thus conclude the District Court did not exceed its allowable discretion when it made its decision not to offset the excused, remaining payments under the APA from the damages awarded to Carco.  But because we vacate and remand for a renewed proximate causation determination, we invite the District Court to reexamine the offset question to the extent it finds there are grounds for so doing, in light of its superior knowledge of the parties' shifting positions and concessions on this issue, as well as the factual relationship between the two contracts.

*IV.     Attorneys' Fees and Costs*

While we are generally very deferential to the calculation of fee awards, the District Court exceeds its allowable discretion in granting such an award where its determination "rests on an error of law (such as application of the wrong legal principle)."  *McDaniel*, 595 F.3d at 416.  Leaving aside the potential need to recalculate attorneys' fees if the Court determines that Carco did not prove proximate cause on its contract claim and hence did not prevail on that claim, we conclude for the reasons that follow, with respect to attorneys' fees, costs, and interest, that the District Court's only errors were its across-the-board, twenty-percent reduction of the fees award, and its denial of prejudgment interest on the same.

As an initial matter, Maconachy argues that because Carco has not proven essential elements of its breach of contract cause of action—namely, causation and damages—no attorneys' fees can be awarded.  This derivative argument is, of course, true, but only to the extent that the District Court does not find on remand that Carco proved its contract claim by establishing that Maconachy's performance proximately caused Carco appropriately quantifiable loss.

17

### A. The Basis for Awarding Attorneys' Fees and Costs

The District Court awarded Carco fees and costs pursuant to APA § 9.1, which provides, in relevant part:

> [Maconachy] . . . shall indemnify . . . CARCO . . . against any and all losses, liabilities, damages, deficiencies, costs, or expenses (including interest, penalties and reasonable attorney's fees and disbursements) ("Losses") based upon, arising out of, or otherwise due to any inaccuracy in or any breach of . . . this Agreement or [] any document or other writing delivered pursuant hereto or otherwise based upon, arising out of, or in any other way relating to or concerning [Maconachy].

E-422.

Maconachy argues that this provision only covers the breach of contract cause of action, and not Carco's other, successful cause of action—faithless servant, which he appears to characterize as a claim sounding in tort. Because the District Court did not distinguish these two causes of action in its award, Maconachy says that the award is flawed. We reject Maconachy's premise that a faithless servant claim is not a contract claim.

The faithless servant doctrine arises out of an agency or employment relationship, and New York courts have repeatedly and consistently used the rules and terminology of contract law in evaluating faithless servant claims. *See Western Electric Co. v. Brenner*, 41 N.Y.2d 291, 293–94 (1977) (where defendant saw to it that his employer awarded a contract to a certain third party in exchange for a $50,000 kickback, "[c]ontract, not tort, form[ed] the basis of plaintiff's causes of action"); *Turner v. Kouwenhoven*, 100 N.Y. 115, 120 (1885) (faithless servant doctrine applies where the defendant "substantially *violates the contract of service*" (emphasis added)).

"Bearing in mind that the contract is one of employment and that the claims are that this defendant transgressed against the *duties of loyalty inherent in the employer-employee relationship*, it is clear that *the controversy arises out of and relates to the contract which is the*

*genesis of the relationship and the consequent duty*." *Bravo Knits, Inc. v. De Young*, 35 A.D.2d 932, 932–33 (1st Dep't 1970) (emphases added). Similarly, this Court has described such claims as "grounded in the law of agency," *Phansalkar*, 344 F.3d at 200, a body of law in which "[c]ontract law . . . defines many of the rights . . . and provides the remedies available for breach," *Restatement (Third) of Agency*, Introductory Note to Chapter 2, Topic 4.

Because § 9.1 of the APA allows for recovery of attorneys' fees for "*any* breach" of the APA itself or "any document or other writing delivered pursuant hereto," it was proper to award attorneys' fees on the faithless servant claim because it arose from Maconachy's employment agreement, which the District Court determined to be mutually dependent on the APA. *See* SPA-29. We thus reject Maconachy's contention that it was error to award attorneys' fees to Carco based on its successful faithless servant claim.

### B. The Overall Calculation

Maconachy next argues that the District Court calculated the fee and cost award improperly, erroneously crediting various ambiguous and/or unreasonable entries. Carco argues that the District Court carefully scrutinized the individual, itemized fees and costs for which it sought reimbursement, and none of the Court's many determinations (except for the Court's twenty-percent, across-the-board reduction of those fees and costs) exceeded the District Court's allowable discretion.

As noted above, we give wide latitude to district courts to assess the propriety of attorneys' fees and costs requests. Here, the specifics of the award were based on a detailed, thorough assessment of the extensive submissions. Numerous deductions were made in relation to the specifics of the work performed and the circumstances of what adequate prosecution of the case required. The District Court grounded its award in fact-specific determinations based on its

19

superior position, having overseen the case for several years, and having conducted a lengthy bench trial. As indicated by our vacatur of any attorneys' fee award with respect to Carco's contract claim, such an award will be inappropriate if, on remand, the District Court finds that Carco failed to establish that Maconachy's failure to follow instructions proximately caused Carco properly quantifiable damage. Except with respect to that possibility, we conclude that the District Court's well-documented, discretionary determinations regarding attorneys' fees and costs—including all reductions and modifications other than the twenty-percent reduction discussed below—were not in excess of its allowable discretion.

### C. The Relation of Fees to the Damage Award

Maconachy argues that the District Court's fee award must be vacated on the independent ground that it was not reduced so as to be aligned with Carco's "[l]imited [d]egree [o]f [s]uccess" in bringing its claims against him. Appellant's Br. at 71. While the District Court did reduce Carco's ultimate fees award (*see* Part IV.E, *infra*), Maconachy argues that the reduction was insufficient. Maconachy notes that the ultimate fee and cost award, even after the District Court's reductions, far exceeded Carco's damages, and that the ratio of damages to fees is impermissible as a matter of law. Carco argues that no such rule of proportionality exists, and that the only general ceiling on a fees and costs award—which itself can be exceeded based on the circumstances of particular cases—is the amount reasonably in controversy, not the ultimate damages actually recovered after trial.

It is true, as Carco argues, that under New York law the amount recovered in a lawsuit does not automatically serve as a ceiling on an award of contractual attorneys' fees; rather, it is only an award "in excess of the amount *involved* in a litigation [that] would normally appear to be unreasonable." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1264 (2d Cir.

20

1987) (internal quotation marks omitted) (emphasis added).  However, even that general ceiling "is only a rule of thumb . . . .  It is a starting point in the process of ultimately determining whether a fee award is reasonable."  *Diamond D Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 20 (2d Cir. 1992).  Regardless of the relationship to the amount in controversy, a court must determine whether the fee arrangement between the prevailing party and counsel was reasonable, "or whether it was grossly disproportionate to the arrangement the plaintiff would have been expected to make with counsel in the absence of a fee-shifting agreement."  *Krear*, 810 F.2d at 1263; *see also Equitable Lumber Corp. v. IPA Land Development Corp.*, 38 N.Y.2d 516, 521 (1976) ("Plaintiff may not manipulate the actual amount of damages by entering into any exorbitant fee arrangement with its attorney and, thus, it may be necessary to look beyond the actual fee arrangement between plaintiff and counsel to determine whether that arrangement was reasonable and proportionate to the normal fee chargeable by attorneys in the context of this case."); *Solow Management Corp. v. Tanger*, 19 A.D.3d 225, 226 (1st Dep't 2005) ("Before ordering one party to pay another party's attorneys' fees, the court always has the authority and responsibility to determine that the claim for fees is reasonable.").

Thus, the touchstone for an award of attorneys' fees pursuant to a contract is reasonableness.  Here, the District Court initially calculated total nonexcludable fees of $1,874,515.51, but then reduced that sum by twenty percent "to bring the fee award within the contours of the amount of damages awarded in this action."  SPA-173.  As there is no rule requiring a fee award to be proportionate to the damages awarded, the District Court erred in imposing the twenty-percent reduction for this reason.  Moreover, the original fee calculation— $1,874,515.51 before the twenty-percent reduction—was well below the total "amount involved" in this litigation, *Krear*, 810 F.2d at 1264, which included Carco's request, in its post-trial

21

submissions, for damages of $4,368,972. Indeed, the $1,874,515.51 was below even the smaller amount that Carco actually gained, which was $2,077,006.85, comprising $571,506.85 in contract damages, $889,711 in damages on the faithless servant claim, and $615,789 in future quarterly payments Carco was excused from making under the APA. In addition, the case involved Maconachy's assertion of counterclaims for more than $1.1 million, *see* A-74–75, against which Carco successfully defended. Although the $1,874,515.51 fee award would be subject to reduction if the District Court finds on remand that Carco failed to prove damages proximately caused by Maconachy's breach of the EA, that fee amount was not excessive based on the District Court's damages award at the time it awarded the fee.

Nothing otherwise indicates that the total fee awarded was anything other than reasonable. The District Court carefully scrutinized the fees submitted, "asking what a reasonable, paying client would do," SPA-157 (internal quotation marks omitted), and reduced the requested rates when, *inter alia*, it determined that the rate was not what "a reasonable client would be willing to pay in a competitive market under all of the relevant circumstances," SPA-162. Thus, the District Court adequately executed its duty to make certain that the fees reflected that which Carco would have been willing to pay absent a fee-shifting agreement; and we cannot say that the District Court abused its discretion in failing to reduce the fees further, based on the claims it had upheld.

### D.    *Interest On Attorneys' Fees and Costs*

Carco contends that the District Court erred in denying interest on its attorneys' fees award since such interest is permitted by the APA. The APA, according to Carco, is not required to explicitly authorize prejudgment interest on attorneys' fees, in part because CPLR § 5001 authorizes prejudgment interest on damages. *See* N.Y. C.P.L.R. § 5001(a) ("Interest shall be

22

recovered upon a sum awarded because of a breach of performance of a contract."). That is, to interpret a provision providing for (unmodified) "interest" as applying only to damages, as Maconachy urges and the District Court held, would be redundant with the New York statute. Carco argues that the relevant language[5] authorizes with sufficient clarity interest on attorneys' fees and costs.

Maconachy argues that interest on attorneys' fees and costs is not awarded absent an express provision in the parties' agreement. The District Court, according to Maconachy, properly construed the APA because "attorneys' fees and disbursements" follows "interest" in the contract's language and therefore "interest" cannot modify or apply to these subsequent terms.

As noted, a *de novo* standard of review applies to the District Court's refusal to award prejudgment interest on attorneys' fees because this determination turns on the interpretation of a contract. *See Hollander*, 337 F.3d at 198. We conclude that the APA satisfies our clear intent requirement for an award of interest. *See Krear*, 810 F.2d at 1267.[6]

*Krear* dealt with a situation in which the contract awarding attorneys' fees contained no provision for interest and held that retroactive application of a higher hourly rate for past services

---

[5] As quoted above, the APA provides that Maconachy "shall indemnify, defend, and hold [CARCO] harmless [against] any and all losses, liabilities, damages, deficiencies, costs, or expenses (including interest, penalties, and reasonable attorney's fees and disbursements) . . . based upon, arising out of, or otherwise due to any" breach of the APA or EA. E-422.

[6] *See also In Time Products, Ltd. v. Toy Biz, Inc.*, 38 F.3d 660, 668 (2d Cir. 1994) (awarding attorneys' fees, "with prejudgment interest calculated on that sum" where the relevant agreement made no mention of interest, but rather stated simply that "[i]n any action brought with respect to the alleged breach of this settlement agreement, the prevailing party shall be paid its reasonable attorney's fees by the non-prevailing party."). The quoted contract language is drawn from the relevant Settlement Agreement provision at issue on appeal, as quoted by the District Court on remand. *See In Time Products, Ltd. v. Toy Biz, Inc.*, Nos. 92 Civ. 5810 (RPP), 92 Civ. 8965 (RPP), 1995 WL 417072, at *1 (S.D.N.Y. July 13, 1995).

could not be justified as interest because the relevant contracts "did not provide that the prevailing party would be entitled to interest." *Id.* at 1267. This easily distinguishes the APA from the facts which drove *Krear*, where no provision for interest existed. The rule announced in *Krear* does not go so far as to forbid interest on attorneys' fees in an instance where, as here, "interest" and "attorneys' fees" are both explicitly authorized. Maconachy is incorrect to assert that *Krear* requires explicit, separate, additional, precise authorization of every context for interest, such as prejudgment interest or interest on attorneys' fees.

Moreover, even if the APA was not properly read as providing for prejudgment interest on attorneys' fees, an award of such interest may be mandatory under New York law. CPLR § 5001 provides that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001(a). Although § 5001 does not explicitly mention attorneys' fees, Appellate Division courts have cited to § 5001 in approving or otherwise discussing an award of interest on contract-based attorneys' fees. *See Centennial Contractors Enterprises v. East New York Renovation Corp.*, 79 A.D.3d 690, 693 (2d Dep't 2010) (citing § 5001(a) for the proposition that "the Supreme Court did not err in awarding the plaintiff prejudgment interest on the . . . attorney's fee award"); *Miller Realty Associates v. Amendola*, 51 A.D.3d 987, 990 (2d Dep't 2008) (citing § 5001(b) in modifying the date from which interest on attorneys' fees was awarded); *Solow Management Corp.*, 19 A.D.3d at 226–27 (citing § 5001 in analyzing the date from which interest on attorneys' fees should begin running).

Because we conclude, upon *de novo* review of the APA, that it provides for an award of interest of attorneys' fees, and because such an award may be mandatory under New York law, the District Court's denial of interest on the attorneys' fees award was error. On remand, after the District Court redetermines the contract damages, it should award interest on any attorneys'

24

fees awarded. Such interest should be calculated from the date on which Carco was found to be the prevailing party. *See Solow Management Corp.*, 19 A.D.3d at 226 ("[T]he date on which the right to interest on the fees accrues is that on which the party seeking fees was determined to be the prevailing party.").

### E. The District Court's Twenty-Percent Reduction

Carco contends that after its line-by-line reductions, reductions in the hourly rates, and a twenty-five percent overall reduction in the number of hours, the District Court made one additional, overall twenty-percent reduction to the fees and costs award that constituted error as a matter of law. This twenty-percent reduction was imposed to align the fee award with the amount of damages awarded. Carco argues that the relevant figure with which to compare the fee award is the amount reasonably in controversy—here, a figure which dramatically exceeded the fee award—not the actual damages recovery. Maconachy responds, as described above, that the District Court erred only in not reducing the award sufficiently.

The District Court appears to have reduced the fee award by twenty percent based on an erroneous belief that a legal principle so required. *See* SPA 172–73. As discussed in Part IV.C. above, however, case law establishes that the standard for an award of attorneys' fees authorized by contract is the reasonableness of the award, generally gauged by the amount involved in the litigation, and that no legal rule requires proportionality between the amount of fees requested and the damages recovered. *See Diamond D*, 979 F.2d at 19–20; *cf. Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011); *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005). To hold otherwise was in excess of the District Court's allowable discretion.

Because the District Court applied an incorrect standard in its twenty-percent, across-the-board reduction, it erred as a matter of law and this reduction is reversed.

*F.*     *The Significance of Prompt Payment*

Carco's final argument—that it was error for the District Court not to consider the prompt payment of legal fees as presumptive evidence of their reasonableness—is baseless. The promptness of payments may, in certain instances, be evidence of a reasonable hourly rate. But regardless of what prompt payment might be evidence of, it would not have been in excess of its allowable discretion for the District Court to find that the hourly rate or number of hours (or any other aspect of the fee request) was not *conclusively established* by prompt payment in light of the shortcomings of the fee requests when subject to the Court's extensive review and holistic determination. Thus, we find no excess of allowable discretion in the District Court's consideration (or lack thereof) of the promptness with which Carco's legal fees were paid.

**CONCLUSION**

For the foregoing reasons, the District Court's judgment as to Carco's breach of contract claim is **VACTED** and **REMANDED** for further determinations regarding proximate causation and quantification of Carco's damages on its contract claim, and, if appropriate, the related question of the applicability of an offset to any resulting damages award. To the extent any damages, fees, costs, and interest awards were based on the breach of contract cause of action they are also **VACATED**. All damages, costs, and interest awards based on Carco's faithless servant claim are **AFFIRMED**. The twenty-percent reduction and denial of interest on attorneys' fees are **REVERSED**. The District Court is instructed to recalculate the award of attorneys' fees in light of those reversals and in light of its findings with respect to proximate cause on Carco's contract claim.