18-1866-cv
*Metro-North Commuter R.R. Co. v. United Illuminating Co.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of June, two thousand nineteen.

Present:
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> RICHARD J. SULLIVAN,
> > *Circuit Judges.*

---

METRO-NORTH COMMUTER RAILROAD COMPANY,
METROPOLITAN TRANSPORTATION AUTHORITY,

> *Third-Party-Plaintiffs-Appellants*,

v.                                                            18-1866-cv

UNITED ILLUMINATING COMPANY,

> *Third-Party-Defendant-Appellee*.*

---

| | |
|---|---|
| For Third-Party-Plaintiffs-Appellants: | BECK S. FINEMAN, Ryan Ryan Deluca LLP, Stamford, CT. |
| For Third-Party-Defendant-Appellee: | JAMES E. RINGOLD (Charles P. Reed, *on the brief*), Loughlin Fitzgerald, P.C., Wallingford, CT. |

---

\* The Clerk of Court is respectfully directed to amend the caption as set forth above.

Appeal from a judgment of the United States District Court for the District of Connecticut (Meyer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Third-Party-Plaintiffs-Appellants Metro-North Commuter Railroad Company and the Metropolitan Transportation Authority (collectively "Metro-North") appeal from the May 22, 2018 decision and order of the United States District Court for the District of Connecticut (Meyer, *J.*), granting Third-Party-Defendant-Appellee United Illuminating Company's ("UI") motion for judgment on Metro-North's contractual indemnification claim. The district court's decision, "as with all contract interpretation, is subject to *de novo* review." *CARCO GROUP, Inc. v. Maconachy*, 718 F.3d 72, 79 (2d Cir. 2013) (per curiam). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we recount only as necessary to explain our decision to affirm.

\*     \*     \*

This case arises from a gruesome accident that occurred along the Metro-North rail line connecting the cities of New York and New Haven. Specifically, a Connecticut resident, Milton Omar Colon ("Colon"), was electrocuted while climbing a catenary tower along the railroad tracks, resulting in the amputation of both of his legs and other injuries. The relevant catenary tower carried different sets of electrical lines, including one set of lines operated by Metro-North and one set of lines that carried electricity for UI's utility service needs. Following the accident, Colon and his wife brought a personal injury suit against Metro-North. Metro-North, in turn, brought a third-party complaint for indemnification against UI. Following a two-week trial, the jury found in favor of Metro-North with regard to Colon's negligence claim. The jury also

answered several interrogatories relevant to the instant matter. This included a finding that UI's wires did not directly or indirectly cause Colon's injuries.

At the time of the accident, Metro-North and UI were in a contractual relationship governed by a Transmission Line Agreement (the "TLA"). Article IX of the TLA provides in relevant part:

> Power Company [UI] agrees to indemnify, protect and save harmless the State or State's Designee [Metro-North] from and against all cost or expense resulting from any and all loss or damage to the property of the State or State's Designee and from any and all loss of life or property, or injury or damage to the person or property of any third person, firm or corporation . . . and from any and all claims, demands or actions for such loss, injury or damage directly or indirectly caused by the presence or use or the construction, installation, maintenance, removal, change or relocation and subsequent removal of the Transmission System and appurtenances thereto, excepting such loss, damage or injury as shall be due solely to the negligence of the agents or servants of the State or State's designee.

Joint Appendix ("J.A.") 124–25.

In construing the TLA, we are bound by the principles of contract interpretation supplied by the law of Connecticut, the relevant jurisdiction here. Thus, we must "first attempt to ascertain the parties' intent from the language they used in their contract, looking at the contract as a whole and giving the contract's words their ordinary meaning and one that renders its provisions consistent." *C & H Elec., Inc. v. Town of Bethel*, 96 A.3d 477, 484 (Conn. 2014).

After reviewing the TLA, we conclude that the it does not obligate UI to indemnify Metro-North for the cost of defending against Colon's personal injury suit. Instead, under the terms of the TLA, UI is only obligated to indemnify Metro-North for injuries or claims *actually* caused by its wires. Because the jury determined that UI's wires were not the cause of Colon's

3

accident, Metro-North's indemnification claim must fail.[1] *See McNeff v. Vinco, Inc.*, 757 A.2d 685, 688–89 (Conn. App. Ct. 2000) (holding that where indemnification clause at issue required a "causal connection" between the indemnitor's work and the injury sustained and indemnitee had failed to introduce evidence of any such connection, the trial court properly directed a verdict in favor of the indemnitor).

In arguing to the contrary, Metro-North confuses the duty to indemnify with the duty to defend. The duty to defend is most commonly imposed in insurance contracts and "means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury covered by the policy." *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 876 A.2d 1139, 1144 (Conn. 2005) (internal quotation marks omitted). "[T]he duty to defend is broader than the duty to indemnify." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 67 A.3d 961, 992 (Conn. 2013). It "is triggered whenever a complaint alleges facts that *potentially* could fall within the scope of coverage, whereas the duty to indemnify arises only if the evidence adduced at trial establishes that the conduct *actually* was covered by the policy." *DaCruz v. State Farm Fire & Cas. Co.*, 846 A.2d 849, 858 (Conn. 2004).

The TLA does not impose a duty to defend on UI, but instead only imposes a narrower duty to indemnify. As the district court noted, contracts that create a "duty to defend" generally employ express language doing so. Special Appendix 4; *see also, e.g. Hartford Cas. Ins. Co.*, 876

---

[1] Indeed, this is the precise interpretation of the TLA that Metro-North itself advanced before the district court. Instead of asserting a duty to defend on the part of UI at the onset of the Colon litigation, it merely maintained that UI would be obligated to indemnify Metro-North *if* the evidence at trial established that Colon's injury was caused by UI's wires. *See* Memorandum in Opposition to Summary Judgment, *Colon v. Metro-North Commuter R.R. Co.*, No. 3:13-CV-00325 (D. Conn. Mar 4, 2016), ECF No. 261 (opposing UI's motion for summary judgment because "there remains a genuine *issue of material fact as to how Colon may have been caused to fall* onto the lower level power lines, *i.e.*, the presence of UI's Transmission System caused Colon's accident") (emphasis added).

4

A.2d at 1145 (finding duty to defend where policy stated that insurer had a "duty to defend a suit seeking damages") (quotation marks omitted). We need not look far to find examples of contractual language imposing such a duty. Article III of the TLA obligates UI to obtain an insurance policy pursuant to which the "insurance company or companies shall agree to investigate and *defend* the insured against all claims for damages, *even if groundless*." J.A. 116 (emphasis added). This language stands in stark contrast to that of Article IX, which obligates UI to "indemnify. . . [Metro-North] from any and all claims . . . directly or indirectly caused by the presence or use . . . of the Transmission System, *excepting such loss, damage or injury as shall be due solely to the negligence of* [Metro-North]." J.A. 124–25 (emphasis added). As Article III of the TLA reveals, the parties clearly knew how to create a duty to defend and chose not to do so in the context of Article IX.[2] Moreover, the inclusion of the exception for injury arising from Metro-North's negligence—necessarily a fact-bound determination that could not be made at the stage of the filing of a complaint—reinforces our conclusion that the TLA does not impose a broad duty to defend on UI.

For all the above reasons, the district court did not err in concluding that UI was not obligated to indemnify Metro-North for the expense of its successful litigation defense. We have considered Appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[2] We also note that, under Article III, UI was obligated to list Metro-North as an additional insured on the policy. J.A. 116. Thus, if UI did in fact procure such insurance, Metro-North's defense costs presumably would be covered under Article III. Nevertheless, at oral argument, counsel for Metro-North could not explain why Metro-North did not assert a duty to defend against the insurance company. Oral Arg. at 32:10-35.