17-2587(L)
*Maricultura del Norte, S. de R.L. de C.V., et al., v. Umami Sustainable Seafood, Inc., et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of May, two thousand nineteen.

Present:
> AMALYA L. KEARSE,
> DEBRA ANN LIVINGSTON,
> SUSAN L. CARNEY,
> *Circuit Judges.*

―――――――――――――――――――――――――――

MARICULTURA DEL NORTE, S. DE R.L. DE C.V.,
SERVAX BLEU, S. DE R.L. DE C.V.,

>    *Plaintiffs-Appellees — Cross-Appellants*,

>            v.                                    17-2587 (L)*, 17-2722 (Con),
>                                                  17-2600 (XAP), 17-2726 (XAP)

UMAMI SUSTAINABLE SEAFOOD, INC.,

>    *Defendant-Appellant — Cross-Appellee*,

CRAIG A. TASHJIAN,
AMERRA CAPITAL MANAGEMENT, LLC,

>    *Defendants — Cross-Appellees*.†

―――――――――――――――――――――――――――

―――――――――――――――――

* The Lead appeal, 17-2587, was determined by stipulation filed on June 6, 2018.

† The Clerk of Court is respectfully instructed to amend the caption as set forth above.

1

For Plaintiffs-Appellees:     JACOB C. COHN & ILAN ROSENBERG, Gordon & Rees Scully Mansukhani LLP, Philadelphia, Pennsylvania.

For Defendant-Appellant:     MARTIN S. SIEGEL, Golenbock Eiseman Assor Bell & Peskoe LLP, New York, New York (Elizabeth C. Conway, JoAnna C. Tsoumpas, Golenbock Eiseman Assor Bell & Peskoe LLP, and Bruce W. Bieber, Kurzman Eisenberg Corbin & Lever LLP, White Plains, New York, *on the brief*).

For Defendants — Cross-Appellees:     MELISSA COLÓN-BOSOLET (Steven M. Bierman, John G. Hutchinson, *on the brief*), Sidley Austin LLP, New York, New York.

Consolidated appeals from an August 24, 2017 judgment of the United States District Court for the Southern District of New York (McMahon, *C.J.*) and associated orders issued by that court on November 24 and 25, 2015, and December 6 and 7, 2016.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the orders and judgment of the district court are **AFFIRMED**.

This appeal concerns a dispute between two heavyweights in the Mexican tuna industry: Maricultura del Norte, S. de R.L. de C.V. ("Marnor") and Umami Sustainable Seafood, Inc. ("Umami"). In December 2014, Marnor and Servax Bleu, S. de R.L. de C.V. ("Servax") (collectively with Marnor, "Plaintiffs-Appellees"), sued Umami and WorldBusiness Capital, Inc. ("WBC"), Amerra Capital Management, LLC ("Amerra"), and Amerra's principal, Craig A. Tashjian (collectively with Amerra, the "Amerra Defendants"). The lawsuit concerned a credit agreement between Marnor and WBC (later assigned by WBC to Umami) and ongoing Mexican court litigation concerning the parties' obligations under that agreement. The United States District Court for the Southern District of New York (McMahon, *C.J.*) dismissed all claims other than Plaintiffs-Appellees' breach of contract claim, with respect to which it awarded Plaintiffs-Appellees approximately $3.1 million in damages. Umami appeals, challenging multiple aspects

of that damages award.    Plaintiffs-Appellees cross-appeal, challenging the district court's refusal to award additional damages, as well as its denial of their motions to file amended complaints featuring additional and reconstituted claims.    We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## Background

### A.  Factual Background

In 2005, Marnor executed a Credit Agreement with WBC authorizing Marnor to receive up to $9.9 million in loans.    In late 2005 and early 2006, Marnor borrowed all $9.9 million authorized by that agreement via two Promissory Notes, which it subsequently restructured through a replacement third Note.    Marnor also mortgaged its fishing vessels and certain of its equipment as security for the loans.    Marnor retained the right under those Mortgages to cure any default at any time by "pay[ing] the total Obligations hereby secured including any interest accrued thereon to the date of such payment and pay[ing] all expenses incurred by [WBC] in connection with such Event of Default and thereby fulfill[ing] all of [Marnor's] obligations under the Credit Agreement, the Promissory Note and under this Mortgage."    App. 2174.

Several years after issuance of the third Promissory Note, Marnor defaulted on its loan payments.    Seeking a financial savior, Marnor began its joint venture with Grupo Altex, a well-funded Mexican conglomerate, together creating Servax, a new entity.    On November 7, 2012, Marnor and Servax advised WBC that they were "ready with as much cash as needed to pay-off the loan."    Sp. App. 126 (emphasis omitted).    Two days later, Marnor sent a formal letter to WBC exercising Marnor's contractual right to repay the debt and redeem its fleet under the Mortgages.    Marnor demanded that WBC liquidate the balance of the debt, including figures for default interest, legal fees, and costs.

3

Following Marnor's November 9 letter demanding specification of the current payoff price, WBC drafted a response letter including its own previous internal calculation of that price. All told—including principal, interest, and legal fees in connection with the ongoing foreclosure proceedings in Mexican court—WBC estimated that Marnor owed $6.01 million. But WBC's counsel, Jose Abizaid ("Abizaid"), advised against WBC executives revealing that payoff estimate or providing any detailed financial information to Marnor. WBC followed Abizaid's advice and revised the response letter such that it failed to disclose a payoff price and directed Marnor to resolve its liabilities through the ongoing foreclosure proceedings in Mexican court. WBC sent that revised letter to Marnor on November 13, 2012.

In January 2013, Servax contacted WBC again to seek a payoff number with which to satisfy its debt. In the interim since Marnor's first attempt to pay off its debt, however, WBC had assigned the Credit Agreement and all related loan documents to Umami in exchange for a payment of $3 million. On February 6, 2013, Abizaid, now representing Umami as the true party-in-interest, provided Servax with a payoff number of $7,921,812.14. On April 2, Servax contacted Abizaid and advised him that they were prepared to make full payment of the $7.9 million demanded by Umami for satisfaction of the debt. On April 4, following some internal discussions, Umami responded to Servax. According to the district court, Umami informed Servax that it "was interested in meeting—but not to discuss repayment," Sp. App. 147, and was instead interesting in discussing a merger with Servax. On April 18, following further communications between the parties, Umami informed Servax that Marnor's payoff number was the $7.9 million figure provided on February 6, plus weekly maintenance fees of $3,500. On April 26, however, Umami reneged, stating that it would not accept payment of that amount.

4

Foreclosure proceedings in Mexican court continued throughout the period that Plaintiffs-Appellees made these unsuccessful attempts to exercise Marnor's right to satisfy its loan obligation. On January 28, 2013, the Mexican court entered judgment in favor of WBC, and against Marnor, dismissing all of Marnor's defenses to WBC's foreclosure action and ordering payment of the principal amount of $5.282 million within five days. Marnor declined to pay that amount.

In May 2016, following various appeals through the Mexican judiciary, Umami filed a motion with the Mexican court overseeing the original foreclosure proceedings to liquidate the amount of interest owing to Umami. On September 29, 2016, the Mexican court granted Umami's liquidation motion, ordering Marnor to pay Umami, within three days, $2,280,895.20 for ordinary and default interest. Marnor declined to pay that amount, and the matter remains on appeal before a Mexican court. Meanwhile, pursuant to Mexican court decisions in 2015 and 2016, Umami obtained ownership of Marnor's vessels.

## B. Procedural History

On December 29, 2014, Plaintiffs-Appellees filed their initial complaint in the United States District Court for the Southern District of New York. Their ten-count complaint included claims for breach of contract against WBC and Umami, as well as for tortious interference by WBC, Umami, and the Amerra Defendants with Marnor's joint venture contract with Grupo Altex. On November 24, 2015, the district court dismissed all but one of Plaintiffs-Appellees' claims against the Amerra Defendants.[1] On November 25, 2015, the district court dismissed all of

---

[1] The district court subsequently dismissed the remaining claim against the Amerra Defendants, which alleged breach of an oral confidentiality agreement, on April 5, 2017.

5

Plaintiffs-Appellees' claims against WBC and Umami, with the exception of their breach of contract claim.

Plaintiffs-Appellees sought unsuccessfully to revive several of their dismissed claims. On June 16, 2016, they filed an affidavit purporting to show that Mexican law did recognize a claim for tortious interference with contract, contrary to the district court's November rulings. The district court construed this filing as a motion for reconsideration of its November orders dismissing Plaintiffs-Appellees' tortious interference with contract claims and ordered additional briefing on whether Mexican law recognized such claims. On December 6, 2016, the district court held that there was "absolutely no basis for the Court to reconsider its original ruling" and that Plaintiffs-Appellees' claims "continue to be dismissed with prejudice." Sp. App. 57. On December 7, the district court also denied Plaintiffs-Appellees' motion for leave to file an amended complaint adding a new claim under New York Uniform Commercial Code (N.Y. U.C.C.) § 9-210.

The district court then conducted a bench trial on Plaintiffs-Appellees' one remaining claim: the breach of contract claim against WBC and Umami. On July 28, 2017, the district court filed its findings of fact, conclusions of law, and verdict. It held WBC and Umami liable for breach of contract, citing WBC's November 2012 refusal to allow Marnor to redeem its loan outside of court and Umami's April 2013 refusal to accept the $7.9 million payoff from Servax in satisfaction of Marnor's debt. The district court awarded Marnor the following damages against WBC and Umami, totaling approximately $3.1 million: (1) the $1.55 million "interest-differential" award, representing the difference between the judgment awarded to Umami in Mexico and the $6.01 million liability that Marnor would have incurred if WBC had allowed it to retire its debt when it attempted to do so in November 2012; (2) $210,000 in legal fees and costs incurred in the

6

Mexican foreclosure action after the attempted redemption in November 2012; (3) $750,000 in damages based on a customs fee that the Mexican government assessed against Marnor for failing to remove its arrested fishing vessels from Mexican waters during the preceding ten years as required under Mexican regulations; and (4) prejudgment interest on the above sums in the amount of $585,000 pursuant to N.Y. C.P.L.R. § 5001.

WBC and Umami timely appealed. Servax and Marnor timely cross-appealed. On June 5, 2018, WBC withdrew its appeal with prejudice pursuant to Federal Rule of Appellate Procedure 42(b).

## Discussion

### A. Umami's Appeal

Following a bench trial, this Court "review[s] a district court's findings of fact for clear error, and its conclusions of law *de novo*." *Carco Grp. v. Maconachy*, 718 F.3d 72, 79 (2d Cir. 2013). The district court's determinations regarding proximate and intervening causes are factual findings "reviewed for clear error." *Id.* at 81. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

#### 1. The Interest-Differential Award

Umami first challenges the central component of the district court's damages award: the $1.55 million sum representing the difference between the amount awarded to Umami in the Mexican foreclosure proceedings and the payoff price that WBC should have provided when Marnor exercised its contractual right to cure in November 2012. Umami principally contends that the district court failed to adequately respect the Mexican court's judgment, in violation of

7

principles of international comity, by basing its damages award to Marnor on the magnitude of the Mexican court's damages award to Umami.

We reject this argument because it misconceives the basis for the district court's award. Contrary to Umami's contention, the district court did not "effectively decide[] that the Mexican court was wrong" in calculating the amount of interest that Marnor owed. Umami Reply Br. at 21. Instead, the district court's award concerned an altogether different claim—Marnor's breach of contract claim against WBC and Umami—that the parties never litigated in Mexico. In finding that claim meritorious, the district court reasoned that, "[h]ad WBC satisfied its contractual obligation under the Credit Agreement and Mortgages and permitted Marnor to pay off the loan on November 9, 2012, for the $6.01 million amount documented by [WBC] in [its] November 2, 2012[] accounting to [Umami], the Mexican court never would have awarded Umami any additional sums." Sp. App. 164. Because the Mexican foreclosure proceedings would not have reached judgment at all absent WBC's breach of contract, "[t]he $1,549,975 in additional damages for which Marnor was held liable by the Mexican court flows naturally and directly from the breach of contract." *Id.* The district court therefore did not seek to undo the Mexican court's judgment, but simply treated it as a benchmark for its own calculation of damages based on WBC's November 2012 breach of contract. The Mexican court's judgment remains, as Marnor rightly contends, completely undisturbed.

Nor do concerns regarding the finality of the Mexican court's judgment dissuade us from affirming this portion of the district court's damages award. Umami notes that Marnor has not paid any of the damages awarded by the Mexican court and that the Mexican court's judgment remains on appeal in Mexico. Umami raises the possibility that, if the Mexican court's damages award were vacated (or decreased) on appeal, Marnor "would receive a windfall by collecting

8

more from Umami than it will ever pay to Umami in Mexico." Umami Br. at 46. We agree that this possibility is troubling, but we think it better addressed through other channels than this appeal. The district court below had jurisdiction over this lawsuit, which concerned different claims from those addressed in Mexico, and awarded damages for Umami's breach of contract based on a sensible theory of causation. We believe that the district court's interest-differential award to Marnor was not clearly erroneous in any respect. Under these circumstances, we conclude that any future changes to the Mexican court's damages award, to the extent that they affect the district court's interest-differential award below, are better addressed via a motion to reopen the judgment in the district court pursuant to Federal Rule of Civil Procedure 60 ("Rule 60") or as a defense to Marnor's action seeking to enforce the judgment below. We decline to vacate the district court's award at this juncture based on the hypothetical prospect of future changes to the Mexican court's damages award.

### 2. Damages Based on Customs Fee

Umami next challenges the district court's award of $750,000 based on the customs fee that Marnor incurred when it was unable to remove its fishing vessels from Mexican waters. Umami argues that Marnor could have removed its ships from Mexican waters at any point in the eight years prior to the start of the foreclosure proceedings, and that it failed to do so despite knowing about the threatened foreclosure. This argument is unavailing because it assumes that Marnor should have somehow anticipated WBC and Umami's breach of contract. Absent that breach, Plaintiffs-Appellees stood "ready with as much cash as needed to pay-off the loan" in November 2012. Sp. App. 126 (emphasis omitted). The district court credited testimony that they would have paid off the loan if afforded the opportunity to do so, which would have allowed them to redeem Marnor's fleet, exit Mexican waters, and avoid the $750,000 customs fee.

9

Instead, WBC and Umami refused to provide Marnor with the payoff number, the fishing vessels remained under arrest pursuant to the ongoing foreclosure proceedings, and the $750,000 fee was incurred as a result. That consequence was no fault of Marnor's.[2]

### 3. Attorneys' Fees

Umami also challenges the district court's award of the approximately $210,000 in attorneys' fees that Marnor incurred in the Mexican foreclosure proceedings after November 9, 2012. The district court found that these fees "would not have been incurred but for WBC's (and later, Umami's) breach of the Mortgages." Sp. App. 165. We cannot say that this finding was clearly erroneous: Marnor's agreement with WBC and Umami expressly entitled Marnor not to litigate its debt in court, and WBC and Umami ignored that provision, forcing Marnor to litigate and thereby directly causing Marnor to incur the fees. Our analysis of the district court's award of attorneys' fees otherwise mirrors our analysis of the interest-differential award. The district court's decision does not implicate international comity concerns because it awarded attorneys' fees as damages flowing directly from Umami's breach of contract without challenging the substantive correctness of the Mexican court's judgment.

### 4. Prejudgment Interest

Finally, Umami challenges the district court's award of prejudgment interest to Marnor pursuant to N.Y. C.P.L.R. § 5001. N.Y. C.P.L.R. § 5001(a) provides: "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract . . . ." Umami argues that

---

[2] One week before oral argument in this appeal, the parties informed us that a Mexican tax court had recently vacated the $750,000 customs fee assessed to Marnor. Umami argues on that basis that we should exclude the customs fee from the district court's damages award, too. Again, we think this argument better addressed to the district court below via a Rule 60 motion to reopen the judgment. At oral argument, both parties agreed on the appropriateness of a Rule 60 conference with the district court to address this development. We expect the parties to proceed with that approach.

the district court's award of prejudgment interest was improper because Marnor never paid any money to Umami in the first place, and therefore never incurred the loss of capital that an award of prejudgment interest is intended to compensate. But an "award of interest is generally within the discretion of the district court and will not be overturned on appeal absent an abuse of that discretion." *New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 602–03 (2d Cir. 2003) (internal quotation marks omitted). What's more, "New York law does not permit the trial court to exercise any discretion where a party is entitled to [prejudgment] interest as a matter of right." *Id.* at 603 (internal quotation marks omitted). N.Y. C.P.L.R. § 5001(a) speaks in mandatory language: "Interest *shall* be recovered upon a sum awarded because of a breach of performance of a contract . . . ." *Id.* (emphasis added). Marnor was therefore entitled to interest on the damages award in its breach of contract action as a matter of right, notwithstanding its failure to pay any money to Umami prior to that award.

Umami also argues that the district court abused its discretion in selecting December 29, 2014 as the date from which to calculate prejudgment interest because Marnor had not yet sustained the damages stemming from the Mexican court's judgment as of that date. N.Y. C.P.L.R. § 5001(b) provides: "Interest shall be computed from the earliest ascertainable date the cause of action existed . . . [but] [w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." While the Mexican court judgment in favor of Umami was not final until September 2016, the district court awarded Marnor damages for legal fees incurred after November 2012. "[W]here damages are incurred at various times after the cause of action accrues, section 5001 grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994).

11

Given that damages were incurred from 2012 onward—albeit with the bulk of the damages incurred in 2016—we have no basis to hold that the district court abused its discretion in selecting December 29, 2014 as the "reasonable intermediate date" from which prejudgment interest would be calculated.

In light of the above analysis, we reject Umami's various challenges to the district court's damages award and conclude that the district court properly awarded the four categories of damages discussed above.

## B. Plaintiffs-Appellees' Cross-Appeal

This Court reviews *de novo* a district court's dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6). *See Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). We likewise review *de novo* a district court's denial of a motion for leave to amend a complaint on the ground of futility. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). Following a bench trial, we review findings of fact for clear error, and conclusions of law *de novo*. *Carco Grp.,* 718 F.3d at 79. We may affirm the district court's judgment "on any ground appearing in the record, even if the ground is different from the one relied on by the district court." *ACEquip Ltd. v. Am. Eng'g Corp.*, 315 F.3d 151, 155 (2d Cir. 2003).

### 1. Damages Based on Insurance Payments

Marnor appeals the district court's denial of $520,227 in damages that it sought for the cost of insuring its fleet while the vessels remained under arrest. But "[i]t is axiomatic that damages for breach of contract are not recoverable where they were not actually caused by the breach—i.e., where the transaction would have failed, and the damage would have been suffered, even if no breach occurred." *Pesa v. Yoma Dev. Grp.*, 18 N.Y.3d 527, 532 (2012). Clause Fifth of the Mortgages provided that Marnor "will maintain at its own expense an insurance in such amounts

12

(with such deductibles or franchises) payable in Dollars . . . against the risks . . . indicated below." Sp. App. 165–66. Because Marnor "was contractually obligated to acquire and maintain insurance on the vessels at its own expense," and thus "would have incurred these insurance expenses, regardless of whether WBC and Umami ultimately breached the contract," the district court concluded that Marnor was not entitled to recover those expenses as damages. *Id.* at 166. At a minimum, the district court's conclusion that Umami's breach did not lead to Marnor's obligation to make the insurance payments was not clearly erroneous.

### 2. Tortious Interference with Contract Claims

Plaintiffs-Appellees argue that the district court erred in dismissing their tortious interference with contract claims against Umami and the Amerra Defendants. The parties dispute whether Mexico, New York, or California law applies to these claims, and whether the claims are meritorious under the law of each jurisdiction. We conclude that the district court properly dismissed these claims under the law of any of these three jurisdictions.

### (a) If Mexican Law Applies

Plaintiffs-Appellees stake their entire Mexican law argument on a judgment issued on December 15, 2011, by Mexico's Fifth Panel of the First Circuit Court of Appeals in Civil Matters, in Amparo Directo 740/2010 ("*SpectraSite*"). Plaintiffs-Appellees read *SpectraSite* to affirmatively recognize a claim for tortious interference with contract under Mexican law. We disagree for three reasons. First, Umami's Mexican law expert persuasively challenges *SpectraSite*'s precedential value, contending that it does not constitute binding *jurisprudencia* in the Mexican legal system and therefore cannot be used as proof of any general precepts of Mexican law. Second, *SpectraSite* dealt principally with a parent company's liability for the torts of its subsidiary, a concept more analogous to corporate veil piercing under American law than to

13

tortious interference with contract. Third, Plaintiffs-Appellees do not reference any other source in Mexican law that purports to recognize a tortious interference with contract claim. Even if *SpectraSite* did suggest the availability of such claims, *SpectraSite*'s non-precedential status and the absence of corroboration from any other source militate against that view of Mexican law as a holistic matter. Accordingly, we adhere to our previously stated view that Mexican law does not recognize a claim for tortious interference with contract. *See Desarrolladora Farallon S. de R.L. de C.V. v. Cargill Fin. Servs. Int'l, Inc.*, 666 F. App'x 17, 25 (2d Cir. 2016) (summary order). Assuming Mexican law applies, the district court properly dismissed Plaintiffs-Appellees' tortious interference with contract claims on this basis.

**(b) If New York or California Law Applies**

Under New York law, "the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996)). "A plaintiff must allege that there would not have been a breach but for the activities of defendants." *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990) (internal quotation marks omitted).

The district court dismissed the tortious interference claim against the Amerra Defendants on causation grounds. Plaintiffs-Appellees do not dispute the district court's reasoning in dismissing their original tortious interference claim against the Amerra Defendants. Instead, they argue that the district court should have granted them leave to amend their tortious interference claim, pointing to allegations in their Proposed Amended Complaint that "from April 2013,

Amerra had control over whether Umami would accept repayment of Marnor's debt . . . [and] used that control to prevent repayment in order to destroy the joint venture [between Marnor and Grupo Altex]." Servax Reply Br. 27. But the Proposed Amended Complaint fails to state a tortious interference claim on causation grounds, too. The Proposed Amended Complaint states that Umami and Amerra "finally reached their deal—assigning to Amerra . . . the right to prevent Umami from accepting any payment and disposing of its rights—on or about June 26, 2013." Supp. App. 97. But that was two months after the date on which Umami reneged on its promise to accept the $7.9 million payoff price from Plaintiffs-Appellees. Therefore, the Amerra Defendants could not have "intentionally procured" Umami's non-compliance with its contractual duties at the point when Marnor sustained the harm in question. Assuming that New York law governs the tortious interference claim against the Amerra Defendants, therefore, the district court properly denied Plaintiffs-Appellees leave to amend their complaint on that basis.

With regard to the tortious interference claim against Umami, the district court concluded that "the conduct that allegedly constitutes tortious interference"—Umami's refusal to accept payment in full from Marnor and Servax—"is exactly the same conduct that Plaintiffs assign as a breach of contract." Sp. App. 48. Therefore, "[b]ecause New York law does not permit the same conduct to be assigned as both a breach of contract and a tort, Plaintiffs' tortious interference claim is duplicative of its breach of contract claim, and so would have to be dismissed on that ground alone." *Id.* at 48. We agree with the district court.[3] Moreover, the same principle applies under California law. *See, e.g.*, *Rufini v. CitiMortgage, Inc.*, 173 Cal. Rptr. 3d 422, 432–33 (Cal. Ct. App. 2014) ("[Plaintiff's negligence] allegations essentially elaborate on [his] breach

_____

[3] We note that Umami has not argued that the joint venture between Marnor and Grupo Altex effected a novation of Marnor's contractual duties to Umami.

15

of contract allegations and therefore do not support a separate cause of action in tort."); *Khoury v. Maly's of Cal., Inc.*, 17 Cal. Rptr. 2d 708, 711–12 (Cal. Ct. App. 1993) (dismissing two tort claims as duplicative of breach of contract claim).   For these reasons, assuming that either New York or California law governs the tortious interference claim against Umami, the district court properly dismissed it.

### 3.  New York U.C.C. Claim

Finally, Plaintiffs-Appellees challenge the district court's denial of leave to amend their complaint to add a claim under N.Y. U.C.C. § 9-210 against Umami.   N.Y. U.C.C. § 9-210 requires a secured party to comply with a debtor's request for an accounting within 14 days of receiving such request.   N.Y. U.C.C. § 9-210(b).   The district court denied Plaintiffs-Appellees leave to amend their complaint on grounds of futility because it concluded that New York law did not govern the parties' security agreement.   Under the N.Y. U.C.C., "[i]f a transaction does not bear an appropriate relation to the forum State, then that State's Article 9 will not apply."   Official Comment 9 to N.Y. U.C.C. § 9-109.

We agree with the district court that New York law should not govern a claim that fundamentally concerns the Mortgages.   N.Y. U.C.C. Article 9 is titled "Secured Transactions," and the express purpose of section 9-210 is to "provide[] a procedure whereby a debtor may obtain from a secured party information about the *secured obligation and the collateral in which the secured party may claim a security interest*."   Official Comment 2 to N.Y. U.C.C. § 9-210 (emphasis added).   Therefore, the district court did not err in focusing its choice-of-law analysis on the Mortgages rather than the underlying Credit Agreement.

As the district court observed, "[w]hile the loan documents are governed by New York law, this is without question a Mexican-centric transaction, especially insofar as the Mortgages—

16

which do nothing more than grant the lender rights in the collateral, which is located in Mexico—are concerned." Sp. App. 68 (internal quotation marks omitted). The Mortgages are express creatures of Mexican law, "granted under the provisions of (i) Article 92 of the General Law of Communications of the United Mexican States, (ii) . . . the Navigation Law of the United Mexican States, (iii) and under . . . the Second Part of the Fourth Book of the Civil Code for the Federal District of the United Mexican States." App. 175. Moreover, Mexico is Marnor's "principal place of business, the place where the security for the loan is located, and the place where the parties envisioned enforcement of the Mortgages taking place." Sp. App. 36. The clear centrality of Mexico to the parties' security agreements means that the N.Y. U.C.C. does not impose obligations on the parties' performance of those agreements. The district court properly denied Plaintiffs-Appellees leave to add this claim on that basis.

In light of the above analysis, we reject Plaintiffs-Appellees' various arguments on cross-appeal and affirm these portions of the district court's decisions as well.

\* \* \*

We have considered the parties' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the orders and judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

17